*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEJON DEMARKUS-ROLAND JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
August 07, 2026
11:48 AM

No. 370753
Wayne Circuit Court
LC No. 20-004764-01-FC

Before: LETICA, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of assault with a dangerous weapon (felonious assault), MCL 750.82, third-degree fleeing and eluding, MCL 257.602a(3), and three counts of possession of a firearm in the commission of a felony (felony-firearm), MCL 750.227b.[1] Defendant was sentenced to 40 to 60 months; imprisonment for the third-degree fleeing and eluding conviction, 32 to 48 months' imprisonment for his felonious assault conviction, and two years' imprisonment for each felony-firearm conviction to be served concurrent to each other but consecutive to their respective accompanying felony. We affirm defendant's convictions and sentence but remand for the ministerial task of correcting his judgment of sentence to remove one count of felony-firearm.

## I. BACKGROUND

On May 15, 2020, multiple officers with the Romulus Police Department were dispatched to an apartment complex to respond to an ongoing situation involving an armed individual inside a purple motor vehicle. When officers arrived, they split up to try to find the at-issue vehicle. Sergeant Matthew Reese located it first—he saw a parked purple Chrysler 300 with individuals inside. Sergeant Reese yelled at the individuals to exit the vehicle and show him their hands. In

---

[1] Defendant was charged with assault with intent to murder, MCL 750.83, but the jury convicted him of the lesser offense of felonious assault. The jury also acquitted defendant of a separate felonious-assault charge.

-1-

response, the Chrysler backed out of the parking space and drove directly at the sergeant, who jumped out of the way.

The Chrysler drove through the apartment-complex subdivision, and Detective Jason Otter pursued it in his unmarked police vehicle. Meanwhile, Corporal Nathan Kuczera tried to position his fully marked police cruiser in a different area of the complex subdivision to cut off potential escape routes. The Chrysler eventually drove down a dead-end street inside the subdivision. It then drove through a carport and onto some grass, where the individuals inside the vehicle got out. Detective Otter saw a shorter male exit the passenger side and a "much larger male"—later identified as defendant—exit from the driver's side.

Detective Otter radioed that the suspects were on foot, and after hearing that call, Corporal Kuczera saw the two suspects running around a building, with the taller individual carrying a rifle. Corporal Kuczera watched as the individual raised the rifle towards the corporal's vehicle, causing the corporal to duck across his front seat. Corporal Kuczera then heard gun fire. Detective Otter, who had gotten out of his vehicle to pursue the suspects on foot, saw Corporal Kuczera's marked patrol car and watched as the taller individual's "arms came up and then [the detective] just saw [a] muzzle flash and . . . heard two big bangs." Detective Otter did not see a weapon—he only "saw the muzzle flash and . . . heard the bangs," which he identified as "gunfire for sure." Traces of a bullet hole were later located on the beam of a carport within 10 feet of Corporal Kuczera's patrol vehicle, and two rifle shell casings were found near where the shooting occurred.

The suspects fled the apartment complex and were eventually found trying to hide by lying in a prone position in a wooded area. The suspects were arrested, and defendant was charged, convicted, and sentenced as described earlier. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first contends that there was insufficient evidence to sustain his conviction of felony-firearm connected to his third-degree fleeing-and-eluding charge because no evidence established that he possessed a firearm during the course of that offense.

### A. STANDARD OF REVIEW

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

### B. ANALYSIS

When considering a challenge to the sufficiency of the evidence to support a conviction, this Court asks whether, when the evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). Viewing the evidence in the light most favorable to the prosecution requires the reviewing court to "draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). It is the jury's role alone "to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those

inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). It is likewise the jury's role alone to assess the credibility of witnesses because it is the jury, not the appellate court, that "observes the witnesses and listens to their testimony." *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020). Direct evidence is not necessary to prove an element of a crime beyond a reasonable doubt; circumstantial evidence and reasonable inferences arising from that evidence can be enough. *Williams*, 294 Mich App at 471.

Defendant does not dispute that the evidence established that he committed fleeing and eluding; he contends only that "there was insufficient evidence for the jury to find that [defendant] possessed a firearm *during the commission of third degree fleeing and eluding*." Defendant acknowledges that a firearm was present in the vehicle during his commission of third-degree fleeing and eluding, and he likewise concedes that there was evidence that he "produced and discharged [that firearm] shortly after the vehicle crashed." But defendant contends that this was not enough to establish that he "possessed" the firearm during the commission of the fleeing-and-eluding crime. We disagree.

Possession can be actual or constructive, as well as sole or joint. *People v Hill*, 433 Mich 464, 470; 446 NW2d 140 (1989). A person constructively possesses an article "if there is proximity to the article together with indicia of control," or put another way, if the location of the article "is known" and the article "is reasonably accessible." *Id*. at 470-471. A defendant's mere presence near a firearm is insufficient to establish possession. *People v Wolfe*, 440 Mich 508, 527; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

Assuming without deciding that defendant's actual possession of the firearm shortly after exiting the vehicle was not enough to establish that he possessed the firearm during the commission of third-degree fleeing and eluding, we conclude that there was circumstantial evidence sufficient for a rational trier of fact to find beyond a reasonable doubt that defendant constructively possessed the firearm while driving the vehicle, i.e., while committing third-degree fleeing and eluding. Defendant is correct insofar as he contends that the prosecution presented no direct evidence that he possessed the gun while driving the vehicle. But the evidence established that he actually possessed the firearm almost immediately after exiting the vehicle. From this evidence, a rational trier of fact could infer that, while defendant was driving the vehicle, he knew where the firearm was, had reasonable access to it, and had control over it. That would logically explain why defendant almost immediately possessed the firearm upon exiting the vehicle. Accordingly, viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in favor of the jury's verdict, a rational trier of fact could have found beyond a reasonable doubt that defendant constructively possessed a firearm while committing third-degree fleeing and eluding.[2]

---

[2] Defendant seems to suggest that the evidence at his trial equally supports that the other individual in the vehicle had sole and total control over the firearm while defendant was driving such that defendant lacked actual or constructive possession of the firearm while committing the crime of fleeing and eluding. While the prosecution did not affirmatively disprove this theory at defendant's trial, it did not need to. The prosecution "is not obligated to disprove every reasonable

-3-

### III. SENTENCING

Defendant next challenges his sentences for his third-degree fleeing-and-eluding conviction and his felonious-assault conviction. Defendant's sentencing guidelines range for his felonious-assault conviction was 10 to 23 months' imprisonment, and the guidelines range for his fleeing-and-eluding conviction was 14 to 29 months' imprisonment. The trial court, however, departed from the guidelines and sentenced defendant to 32 to 48 months' imprisonment for his felonious-assault conviction and 40 to 60 months' imprisonment for his fleeing-and-eluding conviction. Defendant contends that his departure sentences were unreasonable and disproportionate, and that the trial court failed to adequately justify the extent of the departures.

### A. STANDARD OF REVIEW

A sentence that departs from the sentencing guidelines range is reviewed for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). A review for reasonableness asks whether the trial court abused its discretion by violating the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 477; 902 NW2d 327 (2017). The abuse-of-discretion standard recognizes that there is no single correct outcome but a range of reasonable and principled outcomes, and the trial court's decision must fall within that range. *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). The principle of proportionality requires that a sentence imposed be proportionate to the seriousness of the offense and the background of the offender. See *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990). Taking all of this together, reviewing a sentence for reasonableness asks whether the sentence imposed falls within the range of reasonable and principled sentences that accurately reflects the seriousness of the offense and the background of the offender.

### B. ANALYSIS

A sentencing court must always justify the sentence it imposes in a manner sufficient to facilitate appellate review. See *Lockridge*, 498 Mich at 392 (explaining this rule for departure sentences); *Boykin*, 510 Mich at 192 (explaining this rule in the context of sentencing juvenile defendants to a term-of-years sentence). For a sentence that departs from the sentencing guidelines, this rule requires that the sentencing court "provide adequate reasons for the extent of the departure sentence imposed." *Steanhouse*, 500 Mich at 476. See also *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017).[3] Those reasons, however, need only explain why

---

theory consistent with innocence to discharge its responsibility; it need only convince the jury in the face of whatever contradictory evidence the defendant may provide." *Nowack*, 462 Mich at 400 (quotation marks and citation omitted). That is what the prosecution here did.

[3] The prosecution spends most of its brief on appeal criticizing this Court's sentencing jurisprudence post-*Lockridge* because it supposedly treats sentences that depart from the sentencing guidelines as presumptively unreasonable because our cases require sentencing courts to justify any departure sentence imposed. Suffice it to say, requiring sentencing courts to justify

the sentence imposed was proportional to the seriousness of the offense and the background of the offender. See *Steanhouse*, 500 Mich at 475; *Dixon-Bey*, 321 Mich App at 521. Still, while the guidelines are only advisory, sentencing courts *must* " 'consult' " the guidelines and take them " 'into account when imposing a sentence.' " *Steanhouse*, 500 Mich at 470, quoting *Lockridge*, 498 Mich at 392.[4] Similarly, appellate courts can still "use the sentencing guidelines as an aid when doing so assists in determining whether a sentence is proportionate." *Dixon-Bey*, 321 Mich App at 530-531.

At defendant's sentencing hearing, the trial court expressed disagreement with the jury's verdict but noted that it was "stuck" with the verdict, and it was "not going to depart from the guidelines just because [it believed that defendant] should have been convicted of a more serious crime," and the court was "not sure" that there was much of "a case for departure" otherwise. The trial court and the parties then resolved issues related to the scoring of the guidelines. It was ultimately determined that the sentencing guidelines range for defendant's felonious-assault conviction was 10 to 23 months' imprisonment, and the guidelines range for his fleeing-and-eluding conviction was 14 to 29 months' imprisonment.

The court also heard from Corporal Kuczera, the officer that defendant was convicted of feloniously assaulting, who gave a victim impact statement. Corporal Kuczera discussed how he was scared for his life on the night that defendant shot at him, how the shooting that night has since caused Corporal Kuczera to experience increased anxiety both at work and at home, and how the shooting impacted Corporal Kuczera's family members, particularly his wife, who would now "shed tears" whenever Corporal Kuczera "get[s] called in in the middle of the night." A letter from Corporal Kuczera's wife was also read into the record. In that letter, Corporal Kuczera's wife expounded on the anxiety that defendant's shooting at her husband caused her.

Defendant was also given an opportunity for allocution. Defendant said that he wanted to place on the record "what actually took place" on the day of the shooting because "the truth [sic] facts haven't been told." Defendant then accused the officers who testified at defendant's trial of committing "perjury" and claimed that they suppressed evidence of body-cam audio from the night of the shooting. Defendant also proclaimed his innocence and said that the officers' testifying falsely "ruined [his] life." Defendant further accused his current trial counsel and former trial counsel of failing to effectively represent him, claiming that if his counsel had called unidentified "defense witness[es]" and provided "the body cams [sic] material," then defendant would have been "exonerated." Defendant also claimed that, on the night of the shooting, the responding officers did not identify themselves, which caused defendant to fear for his life, and that the officers used excessive force when they approached him. Defendant then provided a lengthy account of his version of events from the day of the shooting. Defendant alleged that he was not the driver

---

the sentence imposed is not equivalent to treating departure sentences as presumptively unreasonable.

[4] Our Supreme Court recently clarified that "[s]uch consultation necessarily requires that the trial court has considered the accurate guidelines and has made a judicial choice about the sentence given with reference to those accurate guidelines." *People v Armogeda*, ___ Mich ___, ___; ___ NW3d ___ (2026) (Docket No. 167760); slip op at 10.

of the vehicle on the night of the shooting; that the other individual drove them into a parking lot of an apartment complex then tried to drive out of the parking space when someone approached the car with a gun; that the other individual drove to a dead end then told defendant to run, and defendant did so because he thought that someone was trying to rob them; that, while running, defendant heard two shots and thought he was going to die; and that he jumped the fence and hid with the other individual because he thought someone was trying to kill them. Defendant claimed that all of this would have been confirmed by "the body cam audio" but it "was suppressed by" the officers and defendant's counsel.

After confirming that defendant was finished, the trial court stated as follows:

> I said I couldn't think of any reason for a departure other than—supportable reasons or reasons that wouldn't stand up on appeal, but you know, after listening to [defendant's] long and rambling and largely incoherent and irrelevant recitation here, [h]is repeated criticism of his own lawyer and lawyers, all of his lawyers who have ever represented him and also looking back on his criminal history even though he was not charged with habitual offender but, you know, and this goes to a number of things. I mean, criminal history has to be taken into account in the guidelines but also a remark that was made earlier about how his mother visited the courtroom and she's very supportive. And a lot of good that support has done all those years as this young man has managed to commit crimes all over the country and including some similar crimes in the past, fleeing and alluding [sic], resisting arrest, theft crimes. I mean, some of them have been dismissed. And an escape, I'm not sure what that means, but you know, his history of contact with the police is voluminous and disturbing, and you know, from this long diatribe that I just listened to . . . it is pretty clear to me that this young man's likelihood of rehabilitation in prison is relatively low. He has sort of a disorganized view of this case and he seems to forget that I heard testimony and saw video evidence, as did the jury, that clearly shows that he shot at the police and ran from the police, and I mean, you know, I frankly had a hard time understanding his long ramblings, but whatever it is, they pretty clearly show that this is a dangerous young man who has I think a reduced risk of rehabilitation.
>
> I am stuck with mandatory maximums in this case, and frankly, I think the maximums, low as they are, a five-year felony in one case, a four-year in another, that they pretty much establish, together with the *Tanner*[5] rule, proportionality in the sentencing I'm about to impose.
>
> So I am going to depart on both of these sentences for the reasons that I have stated and also because I believe they are infinitely proportional given the offense and the way it was committed and the Defendant's explanation or excuses for committing it.

---

[5] *People v Tanner*, 387 Mich 683; 199 NW2d 202 (1972).

On the basis of this reasoning, the trial court sentenced defendant to 40 to 60 months' imprisonment for the fleeing-and-eluding conviction and 32 to 48 months' imprisonment for the felonious assault conviction. After issuing defendant's sentences, the court explicitly recognized that the fleeing-and-eluding sentence was an 11-month departure from the sentencing-guidelines range, and that the felonious-assault conviction was a 9-month departure from the sentencing-guidelines range.

We conclude that the trial court sufficiently justified the sentence imposed to facilitate appellate review, which included providing adequate reasons for the extent of the departure imposed. While the guidelines consider a defendant's criminal history, the court found it significant that defendant continued engaging in criminality despite having support from his family, and that he continued committing similar crimes despite getting caught in the past. More than that, though, the court found it highly significant that defendant had not shown any growth from his previous run-ins with the law, and it believed that defendant's lengthy "diatribe" about how he was innocent and was only convicted because the officers lied and his counsel was incompetent demonstrated that defendant's "likelihood of rehabilitation in prison [was] relatively low." The court was well-positioned to make this finding; it had sat through all of defendant's trial and heard the evidence against him, reviewed his criminal history in preparation for sentencing, and was able to assess defendant and his demeanor during his lengthy allocution. Additionally, after the court imposed its sentences, it expressly recognized the extent that those sentences departed from the sentencing-guidelines range. This demonstrates that the court believed that its reasoning was sufficient to justify not only a departure from the guidelines but the extent of the departure imposed. Lastly, the court explained that it was sentencing defendant to lengthy sentences because it "believe[d] they are infinitely proportional given the offense and the way it was committed and the Defendant's explanation or excuses for committing it," i.e., the court believe that the sentences it imposed were consistent with the principle of proportionality. We agree and conclude that defendant's sentences were within the range of reasonable and principled outcomes that accurately reflect the seriousness of the offense and defendant's background.

On appeal, defendant contends that the trial court could not rely on its "subjective" determination "as to how defendant could be rehabilitated" to justify the length of defendant's sentence. Defendant cites no binding authority for the proposition that this is impermissible, however. Indeed, contrary to defendant's argument, our Supreme Court has held that a defendant's "low potential for rehabilitation" is a "legitimate consideration[] in determining a sentence," *People v Houston*, 448 Mich 312, 323; 532 NW2d 508 (1995), and this Court has identified a defendant's potential for rehabilitation as a reason that may justify departure from the sentencing guidelines, *Dixon-Bey*, 321 Mich App at 525 n 9.

Defendant alternatively contends that "[t]he trial court provided no explanation for the extent of the departure in this matter," but that is simply untrue. We quoted the trial court's explanation for the extent of the departures earlier in this opinion. Defendant alternatively argues that "even if the judge had provided some explanation, the extent of the departures were still unjustified," but we disagree. A sentencing court need only "provide adequate reasons for the extent of the departure sentence imposed," *Steanhouse*, 500 Mich at 476, which the trial court here did. And for the reasons already explained, defendant's resulting sentences were within the range of reasonable and principled outcomes that accurately reflect the seriousness of the offense and defendant's background.

Defendant's sentences are therefore affirmed.

## IV.  JUDGMENT OF SENTENCE

For his final argument, defendant contends that his judgment of sentence incorrectly reflects that he was convicted of a third count of felony-firearm.  When the jury read its verdict, the foreperson stated that the jury found defendant guilty of three counts of felony-firearm, and the jury's verdict form reflects the same.  But after the foreperson read the verdict, the court asked for clarification on one of the felony-firearm charges because the jury found defendant not guilty of the underlying felony, and the following exchange ensued:

> *The Court*:  And Count 13 Felony Firearm in connection with the assault on [Sergeant Reese]?  Count 13, do you see that?  It's in connection with Count 8. You found him not guilty in Count 8 and the Felony Firearm coincides with Count 8[,] so how do you find the Defendant?

> *Juror Number 7* [the foreperson]:  Not guilty.

The jury was polled and confirmed the foreperson's recitation of the verdict.

The parties on appeal agree that defendant's judgment of sentence erroneously reflects that defendant was found guilty of a third count of felony-firearm after the trial court clarified that the jury was finding defendant not guilty of that charge.  We likewise agree, and therefore remand for the ministerial task of correcting defendant's judgment of sentence by removing one count of felony-firearm.

We affirm defendant's convictions and sentences but remand for the ministerial task of correcting defendant's judgment of sentence as stated herein.  We do not retain jurisdiction.


/s/ Anica Letica
/s/ Colleen A. O'Brien
/s/ James Robert Redford